UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

───────────────────────────────────

JOSEPH E. AND ROSE EHLE,

                              Plaintiffs

              v.                                 Civil No. 1:05-CV-189
                                          (DNH/RFT)

UNITED STATES OF AMERICA,

                            Defendant.

───────────────────────────────────

RANDOLPH F. TREECE
United States Magistrate Judge

## <u>MEMORANDUM DECISION AND ORDER</u>

      The attorney-client relationship rests upon a unique contract, which should not be blithely disregarded. To end such an inimitable professional relationship, especially during the course of a litigation, must rest upon secure reasoning and cause. Presently before this Court is Wingate, Russotti & Shapiro, LLP's ("Law Firm") Motion for Reconsideration of their Application to Withdraw as Counsel. Dkt. No. 24, Mot. to Reconsider; *see infra* note 2. The irony of this application is that the request to be relieved as Counsel to the Ehles has been, throughout the four-year history of this case and the Law Firm and Ehles' relationship, the predominately litigated matter in this lawsuit.

      By an Order, dated October 19, 2005, this Court denied the Law Firm's Motion to Withdraw (Dkt. No. 10) and we further withdrew our *sua sponte* Order to Show Cause (Dkt. No. 8). Dkt. No.

18.[1]  Promptly thereafter, the Law Firm filed an Appeal of this Court's Memorandum-Decision and Order with the Honorable David N. Hurd, the United State District Judge assigned this case.  Dkt. No. 20, Law Firm's Objections, dated Nov. 2, 2005.  While the Appeal was pending before Judge Hurd, the Law Firm consulted with a physician and secured a written report from this doctor, dated December 8, 2005.  Dkt. No. 24, Law Firm's Mot. for Reconsideration, Mem. of Law, dated Dec. 23, 2005.[2]  A request was made to submit this new report to Judge Hurd for his consideration.  *Id*. By an Order, dated December 20, 2005, Judge Hurd ruled that "Plaintiffs' counsel seeks permission to submit new materials with regard to his appeal of the Magistrate Judge's order denying withdrawal as counsel pursuant to Local Rule 83.2(b).  The request is denied without prejudice for counsel to submit the new materials in a motion for reconsideration to the Magistrate Judge. Otherwise the appeal and objection are denied."  Dkt. No. 23.

Generally, reconsideration of a court's prior decision is warranted only where the moving party demonstrates "(1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear error or prevent manifest injustice." *Bartz v. Agway, Inc.*, 849 F. Supp. 166, 167 (N.D.N.Y. 1994) (citing *Wilson v. Consol. Rail Corp.*, 815 F. Supp. 585 (N.D.N.Y. 1993); *McLaughlin v. New York Governor's Office of Employee Relations*, 784 F. Supp. 961, 965 (N.D.N.Y. 1992); *see also Doe v. New York City Dep't of Soc. Serv.*, 709 F.2d 782, 789

---

[1]  This Memorandum-Decision and Order was filed under seal.  For purposes of the public docket, the Court issued an abbreviated Order setting forth the Court's directives.  Dkt. No. 17.

[2]  Initially when this Motion for Reconsideration was filed with this Court, we directed that it be filed under sealed.  Similarly, by a Letter-Motion, dated January 23, 2006, the Law Firm requested that the physician's written report be submitted under seal, which this Court granted.  *See* Dkt. Nos. 25, Law Firm's Lt.-Mot. & 26, Order, dated Jan. 23, 2006.  Upon further consideration, and as a part of this Order, the Court will lift the seal only as to the Motion for Reconsideration.  The Physician's Report shall remain under seal.

(2d Cir. 1983).   As there is neither an intervening change of controlling law nor a showing of clear error or manifest injustice, the availability of new evidence may be the only ground permitting such a Motion.   Whether this new physician's report constitutes new evidence is of little moment now because the District Judge has essentially asked that this matter be reviewed as a Motion for Reconsideration, and we will, therefore, act accordingly.

The parties' familiarity with the facts are presumed.   Accepting that the crux of this Motion for Reconsideration challenges both the Court's previous factual and legal findings, this Court feels compelled to set forth the case history previously rendered in the October, 19, 2005 Order, for the benefit of other readers.[3]   Moreover, a recitation of these facts are critical to this analysis as they were when first rendered.

On or about August 8, 1999, Mr. Ehle registered several medical complaints to Hudson Headwaters Health Network ("HHHN") in Warrensburg, New York,  about problems with his left leg.  He was seen by Nurse Practitioner K. Roush.  Based upon her observations, medication and rest were prescribed along with a recommendation to return to the clinic if symptoms persisted.   On August 16, 1999, Mr. Ehle returned to the clinic and was seen by Dr. John Rugge.   Two days later, suffering from severe back and leg pain, Ehle was rushed to Glens Falls Hospital.   Surgery was performed but Ehle did not regain consciousness as it appeared from a CT Scan that he had a massive suarachoid bleed, although determined not to be a cerebral aneursym.  Because of this event and probably more serious medical complications, on August 20, 1999, Ehle's left leg was

---

[3]   The facts set forth below were culled from the initial Motion to Withdraw.  Dkt. No. 10 Any and all references are derived therefrom.  In this respect, certain documents previously deemed under seal will not remain as such for the purposes of this discussion, particularly the Ehles' correspondence with the Law Firm and the Court.

amputated.  After coming out of the coma, Ehle received immediate care; Ehle was sent to Sunnyview Hospital and Rehabilitation Center, then back to Glens Falls Hospital for acute care, and then transferred to Westmount Health Facility, a nursing home, until October 2001.

In 2002, at the urging of the Ehles' son, the Law Firm filed a medical malpractice Complaint in New York Supreme Court for the County of Warren.  It appears from the record that the Ehles' son made a phone call and spoke with then partner, Kathleen Kettles-Russotti, who is also a nurse. Ostensibly, Attorney Russotti spoke with Rose Ehle by phone shortly thereafter.  In fact, the Ehles have never personally met with any representative of the Law Firm and the parties otherwise communicated rather sporadically over the years by both telephone and correspondence.[4]  Shortly after establishing an attorney-client relationship, Attorney Jason Rubin, who is an associate in the Firm, was assigned to this matter.  He signed the verification to the State Complaint as well as any other pleadings thereafter.  Rose Ehle represented that she rarely consulted with Ms. Russotti, if at all, and her primary contact at the Firm was Rubin.  Furthermore, there is no disagreement between the Ehles and the Law Firm that the Law Firm was retained, although apparently no retainer agreement was executed solidifying the terms of this professional relationship.

The State Supreme Court Complaint, sounding in both negligence and medical malpractice, was filed on or about April 12, 2002, against John Rugge, M.D., and HHHN, among others, without the benefit of an independent medical consultation as required by New York Civil Procedure Law ("CPLR").  Rubin represented that they filed this lawsuit expeditiously for fear that the statute of

---

[4]  Even to this very day, the Law Firm has not met with the Ehles and they have not expressed, at least to this Court, that they have made such an effort.  Maybe if they had made such an effort and met directly with their client, rather than their impersonal correspondence, this Motion would not have been necessary.

limitations may expire.  This representation is confirmed by Rubin's attached certificate pursuant

to CPLR 3012-a stating that

> I was unable to obtain a consultation required by paragraph one of CPLR 3012-a
> because a limitation of time, established by article two of the CPLR, would bar this
> action and the certificate required by paragraph one of this subdivision could not
> reasonably be obtained before the time expired.

*Ehle, et al. v. Rugge, et al.*, Civ. No. 1:02-cv-1426, Dkt. No.1, Compl.[5]

HHHN and Dr. Rugge were served on July 23 and July 29, 2002, respectively.  *Id.*, Dkt. No. 1,

Notice of Removal at ¶ 1.  Unbeknowst to the Ehles and the Law Firm, by operation of the Federally

Supported Health Centers Assistance Act, codified at 42 U.S.C. §§ 233(g)-(n), HHHN and its

employees are covered under the Federal Tort Claims Act.  28 U.S.C. §§ 1346(b), 2401(b), & 2671-

---

[5]  A certificate of Merit in medical, dental and podiatric malpractice is required
in any action for medical, dental or podiatric malpractice, the complaint shall be
accompanied by a certificate, executed by the attorney for the plaintiff, declaring that
. . . the attorney was unable to obtain the consultation required by paragraph one of
this subdivision because a limitation of time, established by article two of this
chapter, would bar the action and that the certificate required by paragraph one of this
subdivision could not reasonably be obtained before such time expired. If a certificate
is executed pursuant to this subdivision, the certificate required by this section shall
be filed within ninety days after service of the complaint.
N.Y.C.P.L.R. 3012-a(a)(2).

By virtue of this state procedural provision, if a party commences a medical malpractice
action and is  confronted by the statute of limitations, the party can forego an expert's certificate, as
required by this statute, for an additional ninety days after the service of the complaint.  *Cf.*
N.Y.C.P.L.R. 3012-a(a)(1) (mandating a certificate stating that "the attorney reviewed the facts of
the case and [] consulted with at least one physician . . . and that the attorney [] conclude[s] on the
basis of such review and consultation that there is a reasonable basis for the commencement of such
action").

As stated above, Rubin signed a certification, pursuant to CPLR 3012-a(a)(2), on April 12,
2002.  However, and this is one of the critical points of our analysis, the Law Firm never obtained
within ninety (90) days after serving the Complaint on July 23, 2002, a certificate that would have
met the mandates of CPLR 3012-a(a)(1).

2680; *Ehle v. Rugge et al.*, Notice of Removal at ¶ 3.  Since HHHN is covered under the Federal Tort

Claims Act and Dr. Rugge was found to be acting within the scope of his employment, the

Defendants removed this medical malpractice action to District Court on November 12, 2002.  *See*

*generally Ehle v. Rugge et al.,* Notice of Removal.  Within months of the removal to the Northern

District of New York, on January 14, 2003, the parties entered into a stipulation, which was "So

Ordered" by the Honorable David R. Homer, United States Magistrate Judge, to dismiss this action,

without prejudice, because the Ehles failed to file an administrative claim, pursuant to 28 U.S.C. §

2675(a); however, they reserved their right to commence a new action after the administrative

process was complete.  *Ehle v. Rugge et al.*, Dkt. No. 3.  At this stage of the litigation, apparently

the Law Firm had still not secured an independent expert review of the medical records to determine

if a cause of action existed or the strength of that cause of action.

On or about February 25, 2003, presumably with the assistance of the Law Firm, the Ehles

filed their Administrative Complaint with the Department of Health and Human Services ("HHS").

05-cv-189, Dkt. No. 10, Mem. of Law, Ex. A.  On August 23, 2004, HHS denied Joseph Ehle's

claim and also advised the Plaintiffs that they could file a suit within six (6) months from the date

of mailing of the determination.  *Id*. at Ex. B.  Within less than two weeks of the very last date in

which a complaint could be filed in federal court, on February 14, 2005, a Complaint was filed in

the Northern District of New York.  Dkt. No. 1, Compl.[6]  The Law Firm proffers that the Complaint

was filed on this date to preserve the Ehles' rights and avoid, yet again, preclusion by the statute of

limitations.  The Law firm did so without the benefit of an expert review, which is so vital in a

---

[6]  Considering the date that the agency's determination was signed, the final date to
commence a Federal Tort Claim action and file the Complaint would have been February 23, 2005.

medical malpractice action.  The Defendant United States of America was not served with the

Summons and Complaint until April 20, 2005.  Dkt. No. 4, Aff. of Service.[7]  During the

administrative review, no expert report was submitted.  The Law Firm represents that "after being

retained by the plaintiffs," medical records were obtained and reviewed by former law partner

Kathleen Kettles-Russotti, who is also a nurse.  Dkt. No. 10, Mem. of Law at p. 4.  The exact date

of when the records were reviewed and when Russotti formed an opinion on the merits of the case

are unknown, although it is presumed that such review may have occurred "prior to the filing of the

SF-95 [administrative claim]."  *Id.* at p. 5.  Rubin suggested that it would have been Attorney

Russotti's practice to at least have had an oral consultation with a doctor on the medical malpractice

claims she was handling prior to filing a complaint.  This suggestion is without verification,

however, since Rubin could not locate any notation to that effect within the file.  Nonetheless,

Attorney Russotti opined that Nurse Roush and Dr. Rugge "did not appreciate [Ehle's] history,"

departed from accepted standards of medical care, and thus this case presented a "meritorious cause

of action for medical malpractice."  *Id.* at p. 4.[8]

---

[7]  Pursuant to FED. R. CIV. P. 4(m), a summons and complaint must be served within 120
days from the filing of the complaint or be subject to dismissal, without prejudice.  However, the
Northern District of New York's Local Rules require that the summons and complaint be served
within sixty (60) days of the filing.  N.D.N.Y.L.R. 4.1(b) ("In no event shall service of process be
completed after the time specified in Fed. R. Civ. P. 4.");  *see also* General Order # 25.

On May 17, 2005, prior to the service of a summons and complaint, Rubin spoke with this
Court's law clerk regarding the procedures for substitution of counsel.  During this conversation,
Rubin was advised that an affidavit of service must be filed within 120 days since the sixty (60) day
period had passed.  The affidavit of service was docketed on May 25, 2005.

[8]  It is interesting for us to note that the Law Firm has made no effort to verify this assertion
with Attorney Russotti, even to this date.  It surely would have been of some benefit to this trier of
the facts.  Certainly she could have been easily found to substantiate this contention, as our Clerk
of the Court was able to do so in order for her to update her email address so that her name would

Twenty-two (22) days prior to the filing of the instant Complaint and thirty-one (31) days prior to the expiration of the applicable statute of limitations, on January 25, 2005, the Law Firm, for the first time in its then three-year professional relationship with the Ehles, sent Mr. Ehle's medical records to an independent medical expert, who specializes in vascular surgery. *In camera* Documents, Ex. A, Jason Rubin, Esq. Lt., dated Jan. 25, 2005. "Within approximately 1-2 weeks" of forwarding the records to this doctor, a preliminary review of the records by the doctor indicated a "meritorious cause of action for medical malpractice against Hudson Headwaters."[9] Mem. of Law at p. 5.

Subsequently, this same doctor conducted a more thorough review of the 500 pages of medical records and apparently arrived at a different conclusion as reflected in Rubin's case notes. *In camera* Documents, Ex. B, Notes on Expert Review, dated Mar. 21, 2005. On March 22, 2005, the Law Firm sent the records to another physician. *Id.*, Ex. C, Lt., dated Mar. 22, 2005. As of that date, over a month after initiating the within action, the Complaint had not been served. The Law Firm tenders the position that they did not want to serve the Complaint until they "obtain[ed] the final opinion of the vascular surgeon." Mem. of Law at p. 6. On April 1, 2005, Rubin recorded in his notes an extended conversation he had with this second doctor about the medical claims in this case. Overall, according to Rubin, the doctor had a negative view of the merits of the case, and essentially concluded that there would be difficulty establishing proximate cause. *Id.*; *see generally* Oral Arguments, Oct. 7, 2005.

---

not be stricken from our bar. *See* Dkt. No. 29, Clerk of the Court's Lt., dated May 11, 2006.

[9] If we consider the longer duration of two weeks, this preliminary review was probably received one week prior to the filing of the Complaint.

With the receipt of this less than optimistic medical report as to the merits of the case, the Law Firm formulated their current posture:

> Our plan is as follows: we aren't going to continue with this case [because] we can't prove causation, however, if the clients want to try to get another attorney we will serve the complaint and then either move to be relieved or be substituted."

*Id.*

After speaking with Rose Ehle by telephone, on April 4, 2005, Rubin wrote the Ehles a full page letter, explaining their position why the Law Firm did not want to continue with the case. *In camera* Documents, Ex. E, Lt., dated Apr. 4, 2005. Attached to this letter was another page setting forth the above-mentioned options with signature lines under each option, execution of which would acknowledge the Ehles' election. Ostensibly, the Ehles elected to consult with another attorney and further understood, at least from this form, that the Law Firm would no longer prosecute the case and seek to be relieved as counsel. *In camera* Documents, Ex. F.[10]

Rose Ehle, speaking on behalf of her husband, stated orally on the record and in writing that she disagrees with the opinions of the doctors, that she will not abandon the prosecution of this matter and wishes to proceed with the case preferably with the assistance of an attorney rather than *pro se.* She confirms that she has tried to get several attorneys to assume the case but to no avail. *In camera* Documents, Ex. G, Lt., dated Sept. 12, 2005, to the Court.[11] Recognizing the ambiguities

---

[10] We are not certain when the Ehles signed this option form because it is not dated but Mrs. Ehle has acknowledged that they did in fact sign the form. Yet, the contents of the cover letter suggest great ambivalence in signing the Letter. It appears that possibly this form was executed on or about the time that Mrs. Ehle wrote Rubin on September 12, 2005, in which she states, "I will say that in my mind, heart and soul I am right . . . I have had no success with another attorney, therefore I am releasing you from this situation." *In camera* Documents, Ex. G. This Letter will also be unsealed.

[11] Although she states in her letter to the Court, dated September 12, 2005, that she spoke with several attorneys, on the record she affirmed that it was probably two at best. This Court finds

of prose notwithstanding, she wrote the Court and stated that she "regret[s] . . . releasing Jason Rubin and his firm." *Id*.  During oral argument, Mrs. Ehle's confusion on this issue was even more palpable.  She had been satisfied with the Law Firm's representation at that juncture and, in her view, there was no irreconcilable difference with the manner in which the firm has handled the case, only with the conclusions of the professionals.  Rubin agreed on the record that, notwithstanding difficulties in contacting the Ehles by telephone, the professional relationship never suffered from obstinacy or recalcitrance.

Based upon the oral arguments and the documents received, this Court did not grant the Motion to Withdraw as we felt that the Law Firm had not met their burden.   The principle legal bases upon which we made this Decision, and are controlling as to this Motion as well, is summarized as follows:

> We start with the general proposition that once an attorney has been retained he has entered into a contract and may not abandon his attorney-client relationship without

---

regrettably unfair the Law Firm's attack upon the Ehles:

> [T]he Ehles have admittedly made absolutely no other effort to obtain a new attorney.  The Ehles themselves have not suggested that they cannot find another attorney – they merely haven't made a sufficient effort.  There are perhaps hundreds, if not thousands, of attorneys in New York from who [sic] consultation could be sought.

Dkt. No. 24, Mem. of Law at p. 9.

There are several salient facts the Law Firm has conveniently ignored.  First, the Law Firm possess the entire medical record and not the Ehless and thus a plasubile explanation why no other attorney has reviewed the medical record.  Second, and probably more importantly, the Ehles are of humble means and reside in a rural county.  They were unable to attend the oral argument held on the initial Motion because they did not possess private means of transportation – they do not own an automobile.  The only means of transportation to which the Ehles may have had access from Warrensburg to Albany would be a bus, which is at a minimum a ninety-minute ride.  Compounding this transportation dilemma  is apparently ignored fact on the Firm that Mr. Ehle has lost his leg and his ambulation is more than questionable, and for these reasons this Court permitted the Ehles to participate in the Hearing by telephone.  Rose Ehle made all of these difficulties apparent to all on the record who were willing to listen.

10

reasonable cause. *Welch v. Niagara Falls Gazette*, 2000 WL 1737947, at \*2 (W.D.N.Y. Nov. 17, 2000) (citing *Malarkey v. Texaco, Inc.*, 1989 WL 88709, at \*1 (S.D.N.Y. July 31, 1989)); *see also Moolick v. Natwest Bank, N.A.*, 1996 WL 411691 (S.D.N.Y. July 23, 1996); N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.32(a)(1) ("A lawyer shall not intentionally . . . fail to carry out the contract of employment entered into with a client for professional services but the lawyer may withdraw as permitted by the [Disciplinary Rules]."). In this District, before an attorney of record can be relieved of his contractual relationship to his client, he must have leave granted by the court. N.D.N.Y.L.R. 83.2(b); *see Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999); N.Y. COMP. CODES R. & REGS. tit 22, § 1200.15(a)(1) ("[A] lawyer shall not withdraw from employment in a proceedings before that tribunal without its permission."). In this respect, the court is given great deference in deciding whether to grant a request to withdraw. *Whiting v. Lacara*, 187 F.3d at 321; *Am. Generics, Inc. v. Komal Mohan & Assocs.*, 1998 WL 315082, at \*2 (N.D.N.Y. June 8, 1998) (ruling that a motion to withdraw is "within the trial court's discretion"). And in order for a motion to withdraw to be granted, there must be a showing of good cause and satisfactory reason by affidavits and other proof. *Whiting v. Lacara*, 187 F.3d at 321; *Am. Generics, Inc. v. Komal Mohan & Assocs.*, 1998 WL 315082, at \*2 ; N.D.N.Y.L.R. 83.2 ("An attorney . . . may only withdraw only upon notice to the client and . . . an order of the Court, upon a finding of good cause, granting leave to withdraw.").

A good cause basis for granting this Motion to Withdraw is not as obvious as the movant believes.[12] At oral argument, the Law Firm postulated that, under these facts, a mandatory withdrawal is warranted. [The Law Firm] refers to DR 2-110(B)(2), which in essence states that a lawyer shall withdraw from employment when he "knows or it is obvious that continued employment will result in violation of a Disciplinary Rule" and, that violation would be of DR 7-102. N.Y. COMP.

---

[12] Hostility or irreconcilable differences between the attorney and the client may warrant a withdrawal. *Joseph Brenner Assocs., Inc. v. Starmaker Entm't Inc.*, 82 F.3d 55 (2d Cir. 1996) (where client's son acted as "back seat driver"); *Vaughn v Am. Tel. & Tel. Corp.*, 1998 WL 760230, at \*1 (S.D.N.Y. Oct. 30, 1998). Failure to assist in discovery is also a sufficient basis for withdrawal. *Am. Generics, Inc. v. Komal Mohan & Assocs.*, 1998 WL 315082. Similarly, a deliberate disregard to pay attorney fees is a sound basis for withdrawal. *Brown v. Nat'l Survival Games, Inc.*, 1994 WL 660553 (N.D.N.Y. Nov. 18, 1994). A client's fraudulent conduct is another basis for withdrawal. *Rinder v. Cannon Mills, Inc.*, 486 N.Y.S.2d 858, 859 (N.Y. Sup. Ct. 1985). Refusal to accept a settlement offer, however, may not be a sound basis for withdrawal. *Welch v. Niagara Falls Gazette*, 2000 WL 1737947, at \*2 .

None of these factors or situations are presented in our matter. Even the Ehles' execution of the option whereby they would seek other counsel may not have been fully intended and was ostensibly vaguely understood. As Rose Ehle wrote, she would prefer that the Law Firm continue to represent her and her husband. *In camera* Documents, Ex. G, Lt., dated Sept. 12, 2005.

CODES R. & REGS. tit. 22, §§ 1200.15(b)(2) & 1200.33(a)(2).  Much to the contrary, if there is a basis for a withdrawal here, it would be permissive, not mandatory.  That permissive basis would at least be that the client insists upon presenting a claim that may not be "warranted under existing law and cannot be supported by good faith for an extension, modification, or reversal of existing law."  *Whiting v. Lacara*, 187 F.3d at 321; N.Y. COMP. CODES R. & REGS. tit 22, § 1200.15(c)(1)(a). . . An attorney should not be relieved of his professional responsibilities because he believes his client's case is weaker or harder to prove than when he first accepted the case or filed the complaint.  *Welch v. Niagara Falls Gazette*, 2000 WL 1737947, at *2.  "The possibility that a client's case appears less meritorious during the litigation is a risk that an attorney takes when he agrees to represent the client."  *Vaughn v. Am. Tel & Tel. Corp.*, 1998 WL 760230, at *1.  This risk is especially true when the claim may no longer be profitable or may be more costly to litigate*.  Cohen v. Tzimas*, 515 N.Y.S.2d 173, 174 (N.Y. Sup. Ct. 1987).

Dkt. No. 18 at pp. 14-16 & 19.

With respect to the law stated above and the record before the Court, we found, *inter alia*, the two previous doctors' conversations, which were only reflected in Rubin's notes, to be equivocal at best on whether there was a deviation from the standard of care or a lack of proximate cause.  Without stronger medical opinion, this Court was not prepared to rely upon the Law Firm's belief that the case lacked merit.  At that juncture of the litigation, we further found that the case was not frivolous and to prosecute it would not have violated any Disciplinary Rules.

Now, four years into this professional relationship, the Law Firm has garnered another doctor's opinion, however, this time the opinion is expressed unequivocally in a written report.  Dkt. No. 25.

## I.  DISCUSSION

But for this new medical opinion, the Court's previous ruling would remain unchanged.  Because Defendants renew their previous arguments, which this Court previously found unpersuasive, and further attack this Court's findings and reasoning in denying their Motion, we are obliged, once again, to address as comprehensively as possible all of the Law Firm's positions.

First, we find the Law Firm's argument that withdrawal of counsel is mandatory to be erroneous.  At best, if there is a basis for withdrawal, it would be for permissive reasons, not mandatory.  And, as the Law Firm duly notes in citing *Whiting v. Lacara*, as we have done previously, that the Discipline Rules, in terms of deciding a motion to withdraw, are not mandatory doctrines but, at best, provide guidance in helping to determine what may constitute good cause. *Whiting v. Lacara*, 187 F.3d at 321. The referenced Disciplinary Rules upon which we need to consult in addressing this Motion are set forth as follows:

> A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if:
>> (1) The lawyer knows or it is obvious that the client is bringing the legal action, conducting the defense, or asserting a position in the litigation, or is otherwise having steps taken, merely for the purpose of harassing or maliciously injuring any person.
>> (2) The lawyer knows or it is obvious that continued employment will result in violation of a disciplinary rule.
>> (3) The lawyer's mental or physical condition renders it unreasonably difficult to carry out the employment effectively.  (4) The lawyer is discharged by his or her client.

N.Y. COMP. CODES R. & REGS. tit 22, 1200.15(b).

****

> A lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client, or if: [] the client [] insists upon presenting a claim or defense that is not warranted under existing law and cannot be supported by good faith argument for an extension, modification, or reversal of existing law.

*Id.* at 1200.15(c)(1)(i).

The Law Firm seems to suggest that this Court is mandated to grant their Motion because they possess a subjective belief that § 1200.15(b)(2) is the most applicable provision.  If the Court was to accept this premise, clearly it would forsake the embedded "good cause" analysis, which we hold to be controlling in every case when considering a withdrawal motion, and, moreover, if we

13

were to embrace this proposition, we would then desert the tremendous deference given to the trial court in ascertaining when a motion to withdraw has met such a burden.  In support of their suggestion, the Law Firm cites several cases, which upon closer inspection give little endorsement to this proposition, if any.  None of the cases cited granted a motion to withdraw under § 1200.15(b)(2) (mandatory), but rather those motions were granted, as the larger cache of cases have considered, under the permissive withdrawal analysis guided by § 1200.15(c)(1).[13]  As we have found, there is no definitive template or formula that can adequately serve a court in determining good cause and courts are compelled to employ a case by case analysis.  Furthermore, not one of the cases cited by the Law Firm has similar circumstances to this case, a medical malpractice claim extending over a four-year duration.[14]  Under these circumstances, this Court will consider this Motion weighing the permissive withdrawal standard as opposed to the mandatory withdrawal

---

[13]  In fact, although § 1200.15(b)(2) may have been mentioned in those cases, this Court did not find one case that granted a motion to withdraw following the Discipline Rule found at § 1200.15(b)(2).

[14]  A medical malpractice claim such as this case has peculiar nuances that do not easily fall within the factual analyses set forth in those cases cited by the Law Firm.  *See* Dkt. No. 24, Mem. of Law at pp. 3-7.  The Court has found, however, other medical malpractice cases that are more similar, and thus more instructive and persuasive. *Cohen v. Tzimas*, 515 N.Y.S.2d 173 (N.Y. Sup. Ct. 1987); *LeMin v. Central Suffolk Hosp.*, 565 N.Y.S.2d 190 (N.Y. App. Div. 2d Dep't 1991); *Positano v. Maimondes Med. Ctr.*, 657 N.Y.S.2d 966, 967 (N.Y. App. Div. 2d Dep't 1997) (citing *LeMin v. Central Suffolk*); *Rann v. Lerner*, 554 N.Y.S.2d 649 (N.Y. App. Div. 2d Dep't 1990); *Petito v. Goodman*, 619 N.Y.S.2d 948 (N.Y. App. Div. 2d Dep't 1994) (citing *Rann v. Lerner*). These cases were determined under the permissive withdrawal standard and required significantly more proof than counsel's subjective belief.  To the extent that those cases cited by the Law Firm provide an analysis on the withdrawal standard, this Court will consider them but, by no measure does this Court feel obligated to adopt those findings just because they are examples of the motion being granted.

Discipline Rule.[15]

Next, the Law Firm complains that this Court placed a more onerous burden than what established law provides, to which this Court disagrees.  *See* Dkt. No. 24, Mem. of Law at p. 7. We are uncertain what onerous burden they referred to, but we could have been persuaded to adopt the higher burden espoused in *Foster v. City of New York*, 2000 WL 145927, at *4 (S.D.N.Y. Feb. 7, 2000), a precedent that the Firm has cited: "[I]n the absence of a **compelling justification**, the court will not relieve an attorney of his obligation." (emphasis added); *see also Welch v. Niagara Falls Gazette*, 2000 WL 1737947, at *2.  One ruminates on where the Firm's Motion would stand if subjected to the compelling justification standard.  The guiding principle, however, is that the courts have considerable discretion in deciding motions to withdraw.  *Ghesani v. Trico VIII Petroleum, Inc.*, 2005 WL 3117485, at *1 (S.D.N.Y. Nov. 22, 2005) (citing, *inter alia*, *Whiting v. Lacara*, 187 F.3d at 320); *Welch v. Niagara Falls Gazette*, 2000 WL 1737947, at *3 (same).

In the October 19, 2005 Order, this Court mentioned that there was neither an affidavit nor report from an expert, just lawyers' notes of conversations with the experts, which we found did not meet their burden.  It appears that the Law Firm would like this Court to espouse a new maxim of

---

[15] The Law Firm chides this Court for citing an applicable proposition of law in deciding a motion to withdrawal: "In citing to mere dicta in *Vaughn [v. Am. Tel. and Tel. Corp*, 1998 WL 760230], your Honor apparently overlooked the actual holding of the case." Dkt. No. 24, Mem. of Law at p. 6.  Nothing of the sort occurred.  Citing *Vaughn*'s prose for a principle of law generally accepted as a common thread in these types of matters, we held that "[t]he possibility that a client case appears less meritorious during the litigation is a risk that any attorney takes when he agrees to represent the client." Dkt. No. 18 at p. 19 (quoting *Vaughn v. Am. Tel. and Tel. Corp*., at *1); *see also Welch v. Niagara Falls Gazette*, 2000 WL 1737 947, at *2 (citing, of course, *Vaughn v. Am. Tel. and Tel. Corp*, 1998 WL 760230).  Because *Vaughn*'s facts primarily dealt with a breakdown between counsel and his client over the course of settlement prospects, which is not the situation confronting this Court, it was neither controlling nor necessary for us to refer to the holding of the court.  Mere dicta notwithstanding, that proposition of law stands in reference to this case.

law - the focus should be the attorney's "subjective beliefs" regarding the merits of the case rather than a Court's objective assessment of the prospective merits.  Dkt. No. 24, Mem. of Law at p. 8. First, an attorney's subject belief as to the merit of a cause of action sounding in medical malpractice has never been embraced.  Consider if you will the infinite wisdom of the New York State legislature requiring that an expert certification be attached to a medical malpractice complaint.  *See supra* note 5.  The same is true in other situations where the discussion of the claim deals with opinions outside the kin of the average person.  Furthermore, and as a general notion, lawyers, just like laymen, are incompetent to render a complex medical opinion.  So to require more than a lawyer's notes under circumstances like this case is more consistent with the Court meeting its responsibilities in deciphering whether good cause exists for a withdrawal than not.  *See Cohen v. Tzimas*, 515 N.Y.S.2d 173 (counsel therein provided expert reports); *Rann v. Lerner*, 554 N.Y.S.2d 649 (an expert report was provided); *see also supra* note 14.  We are better served to err on the side of caution, requiring greater proof under these circumstances than to succumb to the Law Firm's arguable legal proffer.  Although the courts should give some weight to an attorney's good faith belief as to the merit of the case, to focus on that attorney's subjective belief at the expense of an objective assessment is, in fact, the court jettisoning its responsibility and practicing judicial imprudence.  If courts yielded to every attorney's subjective belief, we would have bedlam within our judicial system, flooded with attorneys withdrawing from cases upon a whim and displeasure, and utter chaos would rein.  *Bernstein v. Bernstein*, 1993 WL 466402, at *1, (E.D.N.Y. Aug 13, 1993) ("A determination of good cause should obviously be based upon objective standards rather than the subjective needs of the parties."); *see also Heck-Johnson v. First Unum Life Ins. Co.*, 2006 WL 1228841 (N.D.N.Y. May 4, 2006) (in scrutinizing a stipulation to substitute counsel, the court

found that "district courts have broad discretion to control their dockets, and may enact rules requiring good cause before they permit withdrawal"). As tantalizing as this whimsy appeals to the Law Firms, we are not prepared to conform with such a request.

Apparently, the Law Firm probably did not take their own suggestion seriously. If they did, considering how inferentially strongly they felt by it, they would not have made the effort to secure an expert report to submit to Judge Hurd on their Appeal. The securing of the latest expert report by the Law Firm is a tacit admission that under these circumstances more is required, even though they proffer in this Motion otherwise. Now, with the support of a comprehensive medical report, the Law Firm are in a better stead to have their Motion to Withdraw satisfactorily considered. And based upon this third medical review, the Law Firm opines that "it is currently our belief that this case has no merit and no prospect of recovery whatsoever." Dkt. No. 24, Mem. of Law at p. 9. This latest medical report has now altered the Motion's landscape.

With tortuous reasoning and deflection, the Law Firm has yet to recognize that but for their actions, or lack thereof, this Motion would be unnecessary. The Firm makes the hollow statement that the "alleged delay [in getting an expert] has absolutely no bearing on the merits of the case. That is, the experts' opinions are not altered merely because the records were reviewed in 2005 as opposed to 2002 or 2003." Dkt. No. 24, Mem. of Law at p. 10. Such musings are vacuous at best. Had the Law Firm acted more promptly in timely submitting this case to an expert in order to determine if it had merit within the first or three-plus years they represented the Ehles prior to filing this Complaint, as they should have, this matter would not be before us, and this is the distinguishing

17

factor of this case from all of the other reported cases that dealt with motions to withdraw.[16]  If an expert had told them that they did not have a meritorious claim at any time during the three-year period prior to commencing this federal action, the Law Firm would not have had a good faith basis to bring this action, and hence no Complaint could have, or should have, been signed and filed.  *See* Fed. R. Civ. P. 11.  To assert that the three-year delay in securing an expert's opinion was an "inadvertent oversight" is specious and an insult.  The circumstances of this case are the epitome of procrastination and lack of diligence.[17]  Further, for Attorney Rubin to shift the blame upon a former partner, whom the Law Firm conveniently did not ask to provide an affidavit as to the physician(s) that she may (or may not) have consulted with, which they could have readily done, is sophistry at its best.

The Law firm contends that our previous observations that the withdrawal of this Firm could result in "litigation morass, which would significantly impact the court's management of the litigation if the Ehles represented themselves," is unfounded.  Contrary to the Firm's remarks that the Ehles do not intend to proceed "*pro se*," Rose Ehle was rather pellucid during oral argument on the initial Motion in stating that they would not abandon the prosecution of this matter and would rather proceed with the assistance of an attorney than *pro se*.  If there is any doubt of where the Ehles

---

[16]  The Law Firm did not seek an independent medical review of the Ehles records: (1) in 2002, when the State Supreme Court action was commenced; (2) within the ninety days of serving Dr. Rugge and HHNN with the State Complaint, which occurred in the latter part of July 2002, as required by N.Y.C.P.L.R. 3012-a; (3) prior to or during the administrative proceeding before HHS, which lasted for eighteen months; or (4) within the six month duration after HHS denied the claim on August 23, 2004.  The Law Firm had their **first** consultation within two or three weeks prior to filing this Federal Complaint.

[17]  The Law Firm has exhibited far greater effort to seek a withdrawal than they have expended to manage their clients and to expeditiously address the complex issue of this litigation.  This case is the quintessential example of cunctation and the failure to communicate.

stand on this issue, Mrs. Ehle's latest correspondence with the Court should settle this score:

> I am sorry to trouble you again[.] I received a call Monday evening . . . from attorney
> Jason Rubin that he was sending me a letter and copy of a third vascular surgeon's
> report . . . . I do not care if there are numerous reports. . . . Because of these reports,
> Mr. Rubin does not want to continue on our behalf.  I feel he is acting like a
> prosecuter [sic], not my attorney, he just wants out and in plain english [sic], he
> wants to dump me.  Again he took three years to get these doctors reports [which]
> caused more stress and suffering to . . . my family.  He filed for fifteen million dollars
> and now wants to drop everything.  I still cannot accept this.  Let this come to trial
> and have my husband wheeled into the courtroom and observe his condition . . . . I
> still feel that they are wrong and I refuse to give up.

Rose Ehle's Lt., dated Dec. 16, 2005.

If this Motion is granted, the Court will be left with the inevitable problem of the Ehles prosecuting

this matter.  They have not been able to secure another attorney and the likelihood of such happening

is now remote.  A *pro se* litigant prosecuting a complicated medical malpractice claim, like this, is

akin to an untrained person performing surgery with a butter knife.  It is obvious to all that they are

materially and adversely effected by this Application, the Law Firm's protest notwithstanding.  In

essence, the Firm is bailing out of a sinking ship that they crafted out of hull of purportedly good

faith, when filed, and launched it without a mast, rudder or oar.  It is certainly adrift.

  With all of the equitable and legal justifications to deny this Motion, and notwithstanding all

of the Law Firm's failings and the disruption a withdrawal may cause, the saving grace for these

attorneys, as we return to the Federal Rules of Civil Procedure, is Rule 11 itself, which this Court

cannot ignore.  Rule 11 reads in part that

> [b]y presenting to the court (whether by signing, filing, submitting, or later
> advocating) a pleading, written motion, or other paper, an attorney or unrepresented
> party is certifying that to the best of the person's knowledge, information, and belief,
> formed after an inquiry reasonable under the circumstances,--
>> (1) it is not being presented for any improper purpose, such as to
>> harass or to cause unnecessary delay or needless increase in the cost
>> of litigation;

> (2) the claims, defenses, and other legal contentions therein are
> warranted by existing law or by a nonfrivolous argument for the
> extension, modification, or reversal of existing law or the
> establishment of new law;
> (3) the allegations and other factual contentions have evidentiary
> support or, if specifically so identified, are likely to have evidentiary
> support after a reasonable opportunity for further investigation or
> discovery; and
> (4) the denials of factual contentions are warranted on the evidence
> or, if specifically so identified, are reasonably based on a lack of
> information or belief.

FED. R. CIV. P. 11(b).

With this third medical review, which has been reduced to writing and presented to this Court, the

Law Firm has established that they do not have a good faith basis to represent further pleadings on

the merits of this case to this Court without fear of facing sanctions.  *Id.* at 11(c).[18]  It now appears

that factual contentions do not have evidentiary support and reasonable bases in the law.  To compel

this Law Firm to continue with this litigation could cause them to suffer sanctions, which §

1200.15(c)(1) seeks to avoid.  Therefore, the Law Firm has made a showing of good cause to be

permitted to withdraw from this action and Rule 11 compels to us to grant them relief.

    Accordingly, it is hereby

    **ORDERED**, that the Law Firm's Motion for Reconsideration (Dkt. No. 24) is **Granted** and

---

[18]  Rule 11(c) states

> If, after notice and a reasonable opportunity to respond, the court determines that
> subdivision (b) has been violated, the court may, subject to the conditions stated
> below, impose an appropriate sanction upon the attorneys, law firms, or parties that
> have violated subdivision (b) or are responsible for the violation.

FED. R. CIV. P. 11(c).

we grant the Law Firm permission to withdraw.  The Clerk of the Court is directed to note that the

law firm of Wingate, Rusotti, with Jason Rubin, Esq., Kathleen Kettles-Russotti, Esq., and Stavros

E. Sitnas, Esq., of counsel, shall be terminated from the case docket and list Plaintiffs as appearing

*pro se* with the address provided below; and it is further

       **ORDERED**, that the Law Firm's Motion to Reconsider (Dkt. No. 24) be unsealed, however,

the Letter-Motion and attached medical report (Dkt. No. 25) shall remain sealed; and it is further

       **ORDERED**, that the Clerk of the Court file Mrs. Rose Ehle's Letter, dated December 16,

2005, on the case docket, however the attachments filed under seal ; and it is further

       **ORDERED**, that Rose and Joseph Ehle either telephone or correspond with this Court within

thirty days of the date of this Order to determine the next step in this litigation; and it is further

       **ORDERED**, that the Clerk of the Court mail a copy of this Order to the parties, but

particularly to Rose and Joseph Ehle, 34 Grandview Lane, Warrensburg, New York 12885.

       **IT IS SO ORDERED**.

Albany, New York
June 8, 2006

RANDOLPH F. TREECE
United States Magistrate Judge